**Chidiebele Gabriel OKONKWO, Appellant**

v.

**The STATE of Texas.**

No. PD–0207–12.

Court of Criminal Appeals of Texas.

May 15, 2013.

Brian W. Wice, Attorney at Law, Houston, TX, for Appellant.

John R. Messinger, Assistant State Prosecuting Attorney, Austin, TX, Lisa C. McMinn, State's Attorney, Austin, for the State.

## OPINION

ALCALA, J., delivered the opinion of the Court in which KELLER, P.J., and PRICE, WOMACK, JOHNSON, KEASLER, HERVEY, and COCHRAN, JJ., joined.

The State's petition for discretionary review asks whether trial counsel for Chidiebele Gabriel Okonkwo, appellant, rendered ineffective assistance by failing to request a jury instruction on the defense of mistake of fact.[1] Answering this question in the affirmative, the court of appeals reversed appellant's conviction for forgery of money. *Okonkwo v. State,* 357 S.W.3d 815, 821 (Tex.App.–Houston [14th Dist.] 2011); TEX. PENAL CODE § 32.21(b).[2] The State asserts two challenges. First, it contends that the court of appeals erroneously used a subjective standard to assess whether defense counsel was ineffective. Second, it argues that, under an objective standard, counsel could not be held ineffective for failing to request a mistake-of-fact instruction because the State had to prove that appellant knew the money was forged as an element of its case. We disagree with the State on its first challenge and agree on its second. The court of appeals

---

1. The mistake-of-fact defense is codified at Texas Penal Code Section 8.02, which provides, "It is a defense to prosecution that the actor through mistake formed a reasonable belief about a matter of fact if his mistaken belief negated the kind of culpability required for commission of the offense." TEX. PENAL CODE § 8.02(a).

2. Appellant was charged with forgery of money, a third-degree felony. TEX. PENAL CODE § 32.21(b) (person commits offense if he "forges a writing with intent to defraud or harm another") & (e)(1) (when writing is part of an issue of money, forgery is third-degree felony).

did properly apply an objective standard, although it erred by failing to weigh the evidence in a light most favorable to the trial court's ruling. Furthermore, the court of appeals erred by determining that counsel was objectively ineffective in light of the record in this case, which shows that it was an inconsistent, alternative theory asserted by appellant's trial counsel, and its inclusion may have lessened the State's burden of proof. We, therefore, reverse the judgment of the court of appeals.

## I. Background

### A. Facts

According to appellant, he received $60,000 dollars in the mail from a man in Nigeria whom he had never met, who told appellant that he needed assistance in making purchases in the United States. Appellant claimed that he believed the money was authentic currency. He took the money to three different locations with the intent of obtaining money orders. After he successfully obtained two money orders, he was arrested when a clerk who was suspicious about the authenticity of the money called the police. The police confirmed that the money had been forged. At trial, the sole issue was whether appellant knew that the money was forged.

The jury instructions required the State to prove that appellant, "with the intent to defraud and harm another, possess[ed] a forged writing, namely money, and ... possessed the writing with the intent to pass the writing and with knowledge that the writing was forged...." Focusing on the instruction's requirement that a defendant act with the intent to defraud or harm another, appellant's counsel argued in his closing statements that the State had failed to prove forgery because a person cannot "intentionally or intend to act to defraud or harm another with currency that you don't know is counterfeit." Re-

jecting this argument, the jury found appellant guilty.

Appellant filed a motion for new trial claiming that he had received ineffective assistance of counsel based on counsel's failure to request the inclusion of a mistake-of-fact instruction. The only evidence introduced was counsel's affidavit, in which he stated that his failure to make the request was inadvertent and not the result of trial strategy. The trial court denied the motion for new trial without rendering findings of fact or conclusions of law.

### B. Direct Appeal and State's Petition for Discretionary Review

The court of appeals reversed appellant's conviction. *Okonkwo*, 357 S.W.3d at 819–21. It determined that counsel was ineffective for failing to request the instruction on mistake of fact and concluded that this error harmed appellant because the jury was precluded from considering his sole defense. *Id.* The State challenges this analysis in two grounds in its petition for discretionary review.

First, as on direct appeal, the parties dispute whether a subjective or objective standard should be used to assess the effectiveness of counsel. Appellant prefers the former and the State the latter. Focusing on this dispute, the State asks, "Must a reviewing court look beyond the testimony of trial counsel to determine whether not requesting a mistake-of-fact instruction was objectively reasonable?"

Second, also as on direct appeal, the parties dispute whether counsel was ineffective by failing to request an instruction on mistake of fact. The State argues that counsel was not ineffective because the substance of the mistake-of-fact instruction was subsumed by the charge describing the elements of the offense and that the instruction, which lessened the State's burden of proof, would not have benefitted

appellant. Appellant responds that, even if that is true, he was nonetheless statutorily entitled to that defense, which was his only defense, and that counsel, therefore, was ineffective in failing to request it. Addressing this dispute, the State's second ground for review asks, "Can it ever be deficient performance not to request a mistake-of-fact instruction when the offense requires the State to prove knowledge of that fact beyond a reasonable doubt?"

As to these two grounds, we conclude that, under an objective standard, appellant's counsel was not unreasonable in failing to request the instruction. Counsel, therefore, did not render deficient performance.

## II. *Strickland*[3] Error Standard Is Objective

 In its first ground for review, the State argues that the court of appeals improperly focused on counsel's subjective self-assessment rather than reviewing his conduct objectively. Appellant responds that the court of appeals properly considered counsel's admission that his failure to request the instruction was not tactical. In deciding an ineffective-assistance claim, a reviewing court must analyze the reasonableness of counsel's conduct on the facts of the particular case, viewed at the time of the conduct. *Strickland v. Washington,* 466 U.S. 668, 690, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). An appellant must identify counsel's acts or omissions that he alleges are not the result of reasonable professional judgment. *Id.* The court must then determine whether, in light of all the circumstances, the acts or omissions were outside the wide range of profession-

ally competent assistance. *Id.* "[A]n act or omission that is unprofessional in one case may be sound or even brilliant in another." *Ex parte Chandler,* 182 S.W.3d 350, 354 (Tex.Crim.App.2005) (internal quotations omitted).

 Courts "commonly assume a strategic motive if any can be imagined and find counsel's performance deficient only if the conduct was so outrageous that no competent attorney would have engaged in it." *Andrews v. State,* 159 S.W.3d 98, 101 (Tex.Crim.App.2005); *see also Bone v. State,* 77 S.W.3d 828, 833 n. 13 (Tex.Crim.App.2002). However, when no reasonable trial strategy could justify his conduct, counsel's performance falls below an objective standard of reasonableness as a matter of law, regardless of counsel's subjective reasons for his conduct. *Andrews,* 159 S.W.3d at 102; *see also Lopez v. State,* 343 S.W.3d 137, 143 (Tex.Crim.App.2011). Therefore, the focus of appellate review is the objective reasonableness of counsel's actual conduct in light of the entire record.

 Appellant cites *Hardwick v. Crosby* for the proposition that "[t]he mere incantation of 'strategy' does not insulate attorney behavior from review." 320 F.3d 1127, 1186 (11th Cir.2003). Neither, however, does the mere incantation of "no strategy." As *Hardwick* states, the appellate court reviews "attorney behavior." *Id.*

Contrary to the State's suggestion that the court of appeals used a subjective standard to find ineffective assistance based solely on counsel's testimony, the court of appeals articulated and applied an objective standard. It based its decision not

---

**3.** *Strickland v. Washington,* 466 U.S. 668, 688, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) (to prevail on ineffective-assistance claim, defendant must prove (1) that counsel's performance fell below objective standard of reason-

ableness and (2) that deficient performance actually prejudiced defendant). We do not reach the prejudice inquiry because we determine that counsel did not perform unreasonably.

only on counsel's affidavit[4] but also on the facts that (1) mistake of fact was appellant's only defense and (2) he would have been entitled to an instruction had he requested it. *See Okonkwo,* 357 S.W.3d at 819–20. Although we ultimately disagree with its application of the objective standard, which we address in the State's second ground for review, we hold that the court of appeals did properly employ an objective standard to evaluate counsel's performance. We, therefore, overrule the State's first ground for review.

### III. Counsel's Failure to Request Mistake–of–Fact Instruction Was Not Objectively Unreasonable

In its second ground for review, the State asks, "Can it ever be deficient performance not to request a mistake-of-fact instruction when the offense requires the State to prove knowledge of that fact beyond a reasonable doubt?" Appellate courts, however, should decide cases on the narrowest available ground, and resolution of this case does not require resolution of this question as it might to pertain to all other cases. *See Randolph v. State,* 353 S.W.3d 887, 895 n. 32 (Tex.Crim.App. 2011) ("The prudent jurist will typically decide cases on the narrowest, surest ground available, leaving tougher calls, with broader implications, for future cases that squarely present them.") (internal quotations omitted). Instead, we need only decide whether the court of appeals erred in reversing the trial court's denial of appellant's motion for new trial claiming ineffective assistance of counsel. We conclude that it did.

4. As we note below, the court of appeals should have examined the record in a light most favorable to the trial court's ruling and,

### A. Deferential Standard of Review

As noted above, the trial court denied appellant's motion for new trial. An appellate court reviews a trial court's denial of a motion for new trial for an abuse of discretion, reversing only if the trial court's ruling was clearly erroneous and arbitrary. *Riley v. State,* 378 S.W.3d 453, 457 (Tex.Crim.App.2012). A trial court abuses its discretion if no reasonable view of the record could support its ruling. *Id.* This requires the appellate court to view the evidence in the light most favorable to the trial court's ruling. *Id.* In the absence of express findings, as here, we presume that the trial court made all findings, express and implied, in favor of the prevailing party. *Id.* at 459.

The trial court, as factfinder, is the sole judge of witness credibility at a hearing on a motion for new trial with respect to both live testimony and affidavits. *Id.* Accordingly, the appellate court must afford almost total deference to a trial court's findings of historical facts as well as mixed questions of law and fact that turn on an evaluation of credibility and demeanor. *Id.* at 458. This same deferential review must be given to a trial court's determination of historical facts based solely on affidavits, regardless of whether the affidavits are controverted. *Id.* at 457. Here, in viewing the evidence in a light most favorable to the trial court's ruling, the court of appeals should have deferred to the trial court's implied finding that counsel's affidavit lacked credibility. In the absence of that affidavit, the court of appeals should have examined the totality of the record in a light most favorable to the trial court's ruling to assess whether counsel, under an objective standard, rendered ineffective assistance.

therefore, should have entirely disregarded counsel's affidavit.

## B. Counsel Did Not Render Ineffective Assistance

 Appellant was charged with forgery of a writing, which required the State to prove that he acted "with intent to defraud or harm another." TEX. PENAL CODE § 32.21(b). When intent to defraud is the *mens rea* of the offense, the State must prove facts from which that intent is deducible beyond a reasonable doubt and, in the absence of that proof, a conviction will not be justified. *Stuebgen v. State*, 547 S.W.2d 29, 32 (Tex.Crim.App.1977). Because an element of the State's case required proof that appellant acted with the intent to defraud or harm another, the State necessarily had to prove that he knew that the bills were forged, which was the same fact about which appellant claimed to have been mistaken. As this Court has explained, "While the requisite culpable mental state [for the offense of forgery of a writing] is 'intent to defraud or harm,' we fail to perceive how such culpable mental state can be shown absent proof of knowledge that the instrument is forged." *Id.* The State, therefore, correctly observes that proof of the culpable mental state necessarily proves lack of mistake regarding the authenticity of the bills.

Relying on this observation, the State contends that appellant would not have been entitled to an instruction on mistake of fact because the instruction was unnecessary. It argues that when an offense "requires proof of knowledge beyond a reasonable doubt, there is no reason to also instruct the jury that a reasonable doubt on the issue [of knowledge] requires that the defendant be acquitted." In other words, the State suggests that, because the substance of the mistake-of-fact defense was subsumed by the charge and merely negated an element the State was required to prove, a mistake-of-fact instruction would not have been required and served no purpose. *See Bruno v. State*, 845 S.W.2d 910 (Tex.Crim.App. 1993).[5] By contrast, appellant contends that, because the mistake-of-fact instruction is codified, it must be given if it negates a defendant's culpable mental

---

**5.** In *Bruno*, an unauthorized-use-of-a-motor-vehicle case, Bruno testified that the owner of the vehicle had given him permission to use her car, but the owner testified that Bruno had fled with her car without her permission. *Bruno v. State*, 845 S.W.2d 910, 911 (Tex. Crim.App.1993). A plurality of this Court determined that a mistake-of-fact instruction was "unnecessary" because the jury could believe either Bruno or the owner, but not both. *Id.* at 913. This Court distinguished Bruno's case from those in which an instruction was required by noting that those cases involved third parties. *Id.* This Court explained that, in third-party situations, an instruction on mistake of fact must be given so that a jury has the opportunity to acquit a defendant if it determines that he reasonably believed he had the consent of the owner based on a representation made to him by a third party. *Id.* Although the Fourteenth Court of appeals did not follow *Bruno* in this case, it did at one time. *See Hopson v. State*, No. 14–08–00735–CR, 2009 WL 1124389, at *2–4, 2009 Tex.App. LEXIS 2903, at *6–10 (Tex.App.–Houston [14th Dist.] Apr. 28, 2009, no pet.) (not designated for publication). Aside from the Fourteenth Court of Appeals, only one other Texas intermediate court has followed *Bruno*. In *Traylor v. State*, the Beaumont court of appeals held that the trial court properly refused to give a mistake-of-fact instruction because it "was not necessary." 43 S.W.3d 725, 730–31 (Tex.App.–Beaumont 2001, no pet.) (holding defensive instruction that Traylor was mistaken about whether victim was police officer was unnecessary because, to convict Traylor, jury had to find that he knew the victim was police officer). Only one other court of appeals has applied *Bruno*, but it did so in an unpublished decision and in the context of a harm analysis rather than an error analysis. *Turner v. State*, No. 04–03–00436–CR, 2004 WL 1881748, at *6, 2004 Tex.App. LEXIS 7587, at *18 (Tex.App.–San Antonio Aug. 25, 2004, no pet.) (not designated for publication) (citing *Bruno*, 845 S.W.2d at 913).

state, is raised by the evidence, and is requested by a party. *See, e.g., Willis v. State,* 790 S.W.2d 307, 314–15 (Tex.Crim. App.1990); *Giesberg v. State,* 984 S.W.2d 245, 249–50 (Tex.Crim.App.1998).[6] This Court has not yet resolved this dispute, and we need not do so here in the context of a complaint of ineffective assistance of counsel because, under either of the scenarios promoted by the State and appellant, appellant has not shown that counsel was objectively unreasonable in failing to request an instruction on mistake of fact.

The evidence introduced by appellant's trial counsel suggested defensive theories that inconsistently asserted either (1) that appellant lacked criminal intent because he honestly believed that the bills were genuine, even if he was unreasonable in that belief,[7] or, alternatively, (2) that he was reasonably mistaken about the authenticity of the bills.[8] The first alternative theory promoted by appellant's trial counsel was addressed by the jury instruction that ex-pressly preconditioned a conviction upon a jury finding that appellant knew the currency was not authentic. In other words, the instructions on the forgery elements required the State to prove beyond a reasonable doubt that appellant actually knew the bills were forged. By comparison, had counsel pursued an instruction on mistake of fact to address his second alternative theory, the jury would have also had to decide whether that belief was reasonable. *See* TEX. PENAL CODE § 8.02(a). This would have been problematic for appellant because the instruction would have decreased the State's burden of proof by permitting the jury to convict him if it concluded that his mistake was unreasonable, even if it found that the belief was honest. Therefore, counsel was not objectively unreasonable in failing to request an instruction that may have caused the jury to convict him based on a lessened burden of proof.

**6.** *See also Louis v. State,* 393 S.W.3d 246, 253 (Tex.Crim.App.2012) (defendant entitled to mistake-of-fact instruction when raised to negate transferred intent); *Thompson v. State,* 236 S.W.3d 787, 799–800 (Tex.Crim.App. 2007) (same); *Granger v. State,* 3 S.W.3d 36, 41 (Tex.Crim.App.1999) ("When an accused creates an issue of mistaken belief as to the culpable mental element of the offense, he is entitled to a defensive instruction of 'mistake of fact.' ") (quoting *Miller v. State,* 815 S.W.2d 582, 585 (Tex.Crim.App.1991)); *Hill v. State,* 765 S.W.2d 794, 795 n. 2 (Tex.Crim.App. 1989) ("Where a defense, such as mistake of fact, is enacted by the Legislature, the rule that it is not error to deny a requested instruction where it is an affirmative submission of a defensive issue which merely denies the existence of an essential element of the State's case becomes inapplicable."); *Knowles v. State,* 672 S.W.2d 478, 480 (Tex.Crim.App. 1984) (because evidence raised the defensive issue of mistake of fact, "it was reversible error to deny appellant's timely request for a charge on" that defense); *Sands v. State,* 64 S.W.3d 488, 495–96 (Tex.App.–Texarkana 2001, no pet.) ("Even if this [mistake-of-fact] instruction is repetitive to the required proof that the jury find beyond a reasonable doubt that Sands intentionally and knowingly committed this required element of the crime, this statute as interpreted by the Court of Criminal Appeals requires that such an instruction be given to the jury.").

**7.** For example, in his closing argument, defense counsel stated,

One thing that has been proven in this case beyond a reasonable doubt is that [appellant] handled this money and acted in the circumstances in a totally unreasonable way that lacks common sense even at a basic level. That's clear. . . . You can't intentionally or intend to act to defraud or harm another with currency that you don't know is counterfeit.

**8.** Some evidence tended to show that appellant reasonably believed the bills were genuine. Testimony showed that these types of cash transactions were typical in Nigeria and that some of the currency had been determined to be genuine when it was tested with a forgery-detection pen by a store clerk.

Even if the law permitted counsel to obtain an instruction on mistake of fact under these circumstances, the failure to request the instruction was not objectively unreasonable because defensive issues "frequently depend upon trial strategy and tactics." *See Tolbert v. State,* 306 S.W.3d 776, 779–82 (Tex.Crim.App.2010); *see also Vasquez v. State,* 830 S.W.2d 948, 950 n. 3 (Tex.Crim.App.1992) ("[J]ust because a competent defense attorney recognizes that a particular defense *might* be available to a particular offense, he or she could also decide it would be inappropriate to propound such a defense in a given case."). Under the record in this case, we conclude that counsel was not objectively unreasonable by failing to request an instruction on mistake of fact because that theory was inconsistent with a theory that counsel advanced at trial, and it would have misled the jury as to the State's burden of proof.[9] We, therefore, cannot conclude that the trial court's ruling was clearly erroneous and arbitrary and that no reasonable view of the record could support it. *See Riley,* 378 S.W.3d at 457. In light of the entire record, we hold that the court of appeals erred in determining that the trial court abused its discretion. We sustain the State's second issue as we have narrowly construed it.

## IV. Conclusion

We reverse the judgment of the court of appeals and render a judgment affirming the judgment of the trial court.

COCHRAN, J., filed a concurring opinion in which JOHNSON and HERVEY, JJ., joined.

MEYERS, J., did not participate.

9. We do not foreclose the possibility that an attorney could be ineffective by failing to request the instruction under different circumstances or by failing to request an instruction

*OPINION*

COCHRAN, J., filed a concurring opinion in which JOHNSON and HERVEY, JJ., joined.

I join in the Court's opinion. I agree that appellant's trial attorney was not ineffective for failing to request a jury instruction on the statutory mistake-of-fact defense for two distinct reasons: (1) It is not at all clear that appellant was entitled to any instruction on mistake of fact, and (2) The jury instruction that the trial judge gave was more favorable to appellant's defensive theory than an instruction on the statutory mistake-of-fact defense would have been. Furthermore, appellant cannot show prejudice even if his counsel should have requested such an instruction because the jury rejected the more defense-friendly theory of appellant's honest, if stupid, mistaken belief in the authenticity of the bills.

Appellant was a Nigerian engineer who worked for a large oilfield company in the Houston area. He testified that he had been sent $60,000 in cash in a newspaper-wrapped box by a fellow Nigerian named Baba Tunde. Appellant did not know Baba Tunde, but that stranger wanted him to deposit the cash in appellant's bank. Appellant refused to get his bank involved, but he agreed to purchase a series of money orders for Baba Tunde instead.

First, appellant stopped at a nearby Wal–Mart and bought a currency detector pen which, he said, is designed to distinguish authentic bills from counterfeit ones. When he tested it on some of the bills, the pen's ink remained a yellowish hue, which indicated that the bills were authentic.[1]

to negate a transferred-intent element. *See Thompson,* 236 S.W.3d at 799–800.

1. According to appellant, the pen's ink turns black or brown when marked on any surface

Then appellant went back to Wal–Mart and bought a money order for $852. The clerk tested appellant's cash with a currency detector pen, and the ink remained yellowish, so the clerk completed the sale. Appellant then went to a nearby Kroger and bought another money order, this one for $568. Once again, the clerk used a pen detector, and once again the cash passed this test. At the third store, an H–E–B, the clerk refused to issue the money order and told appellant that the currency did not look real.[2] Appellant then suggested that the clerk try some other bills with his pen, but the clerk called the police. Appellant cooperated with the police, told them there was more currency in his car's glove compartment, and helped them gather it up. Appellant was arrested on suspicion of passing counterfeit money.

Appellant's sole defensive theory was that he "honestly believed the bills to be genuine."[3] Maybe he was dumb not to realize that the bills were forgeries, but he did not intend to harm or defraud anyone. His theory was explicitly set out in the application paragraph of the jury instructions, which required the State to prove that appellant

> unlawfully and with intent to defraud and harm another, possess[ed] a forged writing, namely money, and [appellant] possessed the writing with the intent to

pass the writing and *with knowledge that the writing was forged* [.]

Under these jury instructions, if the State did not prove, beyond a reasonable doubt, that appellant *knew* that the money was counterfeit, then the jury was required to find him not guilty. It would not matter if appellant were reckless or negligent in his belief that the money was genuine, because even a patently unreasonable belief, if honestly held, negates the culpable mental state of "knowing that the writing was forged."[4] This was the defensive theory and this is what defense counsel stressed in his closing argument, noting that even the police said, "These are pretty damn good fakes[.]"

> So this is not a case where there was an obvious bell that should have gone off that these are definitely fake. Now, that being said, clearly Mr. Okonkwo was reckless. Clearly, he was negligent ... [but] Mr. Okonkwo's guilt does not—is not proven by showing recklessness or negligence. It's only proven by showing intent. And recklessness and negligence fall far short of intent.

Counsel admitted that it was "unusual and out of the ordinary" to think that someone would send $60,000 in cash through the mail from Nigeria to Texas, but his "lack of common sense" did not mean that he intended to defraud or harm

---

other than authentic U.S. currency bills.

**2.** Secret Service agents testified that a number of special security features that are contained in authentic bills were missing in appellant's currency.

**3.** *Okonkwo v. State*, 357 S.W.3d 815, 818 (Tex. App.–Houston [14th Dist.] 2012).

**4.** *See Green v. State*, 153 Tex.Crim. 442, 221 S.W.2d 612, 616 (1949) (op. on reh'g) (farmer who killed hogs that he mistakenly believed belonged to him was not required to show that his mistake was reasonable because "[a]n intent to steal property and a bona fide claim

of right to take it are incompatible. One who takes property in good faith, under fair color of claim or title, honestly believing that he is its owner and has a right to its possession or that he has a right to take it, is not guilty of larceny even though he is mistaken in such belief, since in such case the felonious intent is lacking"; defendant's mistake negated the essential element of "intent to steal," therefore, jury should not have been instructed that it could acquit only if defendant's mistaken claim of ownership was reasonable as well as in good faith) (internal quotation marks omitted).

anyone when he tried to buy a money order at the H–E–B. Counsel stressed that

> [y]our sole duty and your oath is to consider the question of whether [appellant] acted with intent to defraud or harm another by passing counterfeit money that he knew was counterfeit. You can't … intent to act to defraud or harm another with currency that you don't know is counterfeit.

The prosecutor argued that appellant knew full well that the money was counterfeit:

> There's something wrong here, ladies and gentlemen, when you have this much money from someone you don't know, from someone who tells you, I need you to purchase things for me, but I can't purchase them; I need you to buy money orders. We're not saying he was in cahoots with the guy. We don't even know if this guy really does exist, but what we do know is, he received a package with this much money.
>
> And the defendant, ladies and gentlemen, *knew*. How can you not know? And that whole talk about not having any common sense doesn't matter here, ladies and gentlemen.

The jury rejected appellant's theory that he did not know that the money was counterfeit and that he was honestly mistaken about its authenticity.

In his motion for new trial and on appeal appellant argued that his counsel was ineffective for failing to ask for a jury instruction on the statutory defense of mistake of fact. That defensive instruction would

have required the jury to believe both that (1) appellant honestly believed that the bills were authentic *and* (2) his belief was a reasonable one that the ordinary, prudent person would have held under the same circumstances.[5] Obviously the jury would have rejected that two-pronged theory because they had rejected the first prong-that appellant honestly believed the bills were authentic.

## A. Counsel's Conduct Was Not Constitutionally Deficient Because the Law on Appellant's Entitlement to an Instruction on the Statutory Defense of Mistake of Fact is Unsettled.

First, it is far from certain that appellant was entitled to an instruction on the statutory defense of mistake. The elements of forgery applicable in this case are:

(1) The defendant;
(2) acting with the intent to defraud or harm another;
(3) possesses a writing that is forged [counterfeit bills];
(4) with the intent to pass it.[6]

The statute does not explicitly require the defendant to know that the writing is counterfeit because the legislature did not attach a culpable mental state to the status of the forged writing. In *Baker v. State*,[7] this Court noted that the current forgery offense is a combination of two former penal provisions: the act of forging a writing with the intent to defraud another, and the act of passing a forged writing to

---

**5.** Tex. Penal Code § 8.02(a) ("It is a defense to prosecution that the actor through mistake formed a reasonable belief about a matter of fact if his mistaken belief negated the kind of culpability required for commission of the offense."); *see Mays v. State*, 318 S.W.3d 368, 383 (Tex.Crim.App.2010) ("The statutory mistake-of-fact defense explicitly requires that the defendant's mistaken belief about the existence of a fact is a 'reasonable' one 'that would be held by an ordinary and prudent man in the same circumstances as the actor.' ").

**6.** Tex. Penal Code § 32.21(a)(1)(C), (b).

**7.** 552 S.W.2d 818, 820 (Tex.Crim.App.1977).

another knowing that the writing was forged.[8] The Court in *Baker* then quoted another forgery case in which we had stated,

> While the requisite culpable mental state under Sec. 32.21(b) [the forgery statute] is "intent to defraud or harm," we fail to perceive how such culpable mental state can be shown absent proof of knowledge that the instrument is forged.[9]

And, based on that reasoning, we and other Texas courts have simply added a culpable mental state of "knowing" that the writing was forged in all cases.[10]

If the State must prove that the defendant "knew" that the writing he possessed and intended to pass to another was forged, then I believe that evidence of an honest, albeit unreasonable, mistake directly rebuts that knowledge and no special mistake-of-fact instruction is required.[11] If the courts have inappropriately added a culpable mental state of "knowing that the writing was forged" when the Texas Legislature did not specify any such culpable mental state, then the statutory mistake-of-fact defense could apply[12] because a reasonable belief that the writing (or, as in this case, the currency) is authentic, "negates the kind

8. *Id.* (citing Article 979 of the former Penal Code setting out the offense of forgery as the making of a false instrument in writing, purporting to be the act of another, with the intent to injure or defraud and Article 996 which required proof that "(1) a person must pass as true (2) a forged instrument in writing (3) knowing that it was forged at the time of the passing.").

9. *Id.* (quoting *Stuebgen v. State*, 547 S.W.2d 29, 32 (Tex.Crim.App.1977)).

10. *Pfleging v. State*, 572 S.W.2d 517, 519–20 (Tex.Crim.App.1978) ("[T]he State proved that the instrument was in fact forged, but there is no evidence, circumstantial or otherwise, to show the appellant's knowledge that the instrument was forged or that the instrument was passed with intent to defraud or harm."); *see also Crittenden v. State*, 671 S.W.2d 527, 528 (Tex.Crim.App.1984) (evidence was insufficient to prove that defendant knew that the check he presented was forged and thus that he intended to harm or defraud another); *Solis v. State*, 611 S.W.2d 433, 434 (Tex.Crim.App.1981); *Hill v. State*, 608 S.W.2d 932, 934 (Tex.Crim.App.1980); *Landry v. State*, 583 S.W.2d 620, 621 (Tex.Crim.App.1979).

However, a good argument can be (and has been) made that "knowledge" of the forgery is not a required element of the offense if the State can otherwise prove an intent to defraud or harm. *See Jones v. State*, 545 S.W.2d 771, 777–78 (Tex.Crim.App.1975) (op. on reh'g) ("[W]e hold that an indictment or information for forgery which fails to allege

knowledge as an essential element is not fundamentally defective. However, because knowledge that the instrument is forged is an element which is strongly implied in the statutory definition of forgery, we hold that its absence in an indictment is a matter which may be raised by a motion to quash, but may not be raised for the first time after trial has commenced."); *id.* at 780 ("The Legislature was within its authority in defining the offense and repealing the forgery statutes in the former Code. It has provided that it is unlawful to pass an instrument that is forged with intent to defraud even though the person passing the instrument is unaware that it is forged provided that he intends to defraud with that instrument. This is the wrongful conduct that the Legislature has the authority to penalize. There is no need, cause or justification to add an element to the offense not provided for in the statute.") (Douglas, J., concurring); *see id.* at 781 ("In my opinion knowledge that the instrument was forged is an essential element of forgery under the mode of prosecution in this case. In the absence of such a requirement, the innocent passing of a forged check received in payment is a felony even if the recipient has no knowledge that the check was forged.") (Odom, J., dissenting).

11. *See Celis v. State*, —— S.W.3d ——, ——, Nos. PD–1584–11 & 1585–11, 2013 WL 2373114, at *5–21 (Tex.Crim.App. May 15, 2013) (Cochran, J., concurring).

12. The *Stuebgen* reasoning—it is illogical to think that a defendant could intend to harm

of culpability required by the offense."[13] If the actor's mistaken belief were true—the money was authentic—he would be acting lawfully and not be guilty of any offense.[14] But the drawback is that the actor must offer proof that his mistake was a reasonable one that an ordinary prudent person would likely make under the same circumstances.[15]

The law is unsettled on this precise issue, although it seems that the overwhelming weight of cases have held that the State is required to prove, as an element of its case, that the actor actually knew that the writing he possessed was forged.[16] If so, appellant was not entitled to any additional instructions. But because the law is unsettled on this issue, appellant's counsel could not be found ineffective for failing to request a jury instruction on the statutory mistake-of-fact defense.[17]

---

or defraud another by passing a writing that he did not know was forged—is sensible. I have been unable to find that reasoning rebutted by this Court in any other case. However, the legislature is entitled to add (or not add) a culpable mental state to the forgery statute beyond that of "intent to defraud or harm." Examining the explicit words of the forgery statute, the State need only prove that the writing is, in fact, forged; it need not shoulder the burden of production of showing that the actor knew the writing was forged. *See Burks v. State*, 693 S.W.2d 932, 936 (Tex. Crim.App.1985) (setting out the elements of "forgery by possession with intent to utter are (1) a person (2) 'forges' (3) a writing (4) within intent to defraud or harm (5) another."). Evidence that establishes the actor's intent to defraud or harm carries with it the implication that the actor "knew" the writing was forged. *See Jones*, 545 S.W.2d at 777–78. The statute was written for the ordinary case in which those who possess a forged writing and intend to defraud or harm another surely must know that the writing is forged. The Legislature was entitled to rely upon the "80–20 rule" in drafting a statute for the vast majority of cases in which "knowledge" of the forgery is subsumed by an intent to defraud or harm another. Thus, the State need not, as part of its initial burden of production and proof, independently prove the actor's knowledge that the writing was forged. If the actor claims that his is an unusual case in which he does not know that the writing he possesses is forged, that is precisely the situation for which the statutory defense of mistake of fact was enacted. The actor may raise that defense with some evidence of his reasonable belief that the writing is authentic and then the State must shoulder the burden of proof to establish either that the actor did, in fact, know the writing was forged or the actor's belief in the writing's authenticity was unreasonable.

13. Tex. Penal Code § 8.02(a).

14. *See Celis v. State*, —— S.W.3d at ——, Nos. PD–1584–11 & 1585–11, 2013 WL 2373114, at *17 & n. 45 (Cochran, J., concurring) (quoting Rollin M. Perkins & Ronald N. Boyce, Criminal Law 1045 (3d ed.1982), for the proposition that "[M]istake of fact will disprove a criminal charge if the mistaken belief is (a) honestly entertained, (b) based upon reasonable grounds and (c) of such a nature that the conduct would have been lawful and proper had the facts been as they were reasonably supposed to be.").

15. *See Mays*, 318 S.W.3d at 383.

16. Of course, this element is usually established by circumstantial evidence. *See Baker v. State*, 552 S.W.2d 818, 820 (Tex.Crim.App. 1977) (circumstantial evidence that defendant knew check was forged was sufficient); *see also Williams v. State*, 688 S.W.2d 486, 488–90 (Tex.Crim.App.1985) (in forgery, the culpable mental state of intent to harm or defraud requires proof of knowledge that the check is forged, but if the State proves that an actor has knowledge that a particular check is forged, proof of intent to defraud is inferred, and both knowledge and intent to defraud may be established with circumstantial evidence).

17. *See Ex parte Smith*, 296 S.W.3d 78, 81 (Tex.Crim.App.2009) (counsel may not be held to have provided ineffective assistance when the pertinent law is unsettled); *Ex parte Chandler*, 182 S.W.3d 350, 358–59 (Tex.Crim. App.2005); *Ex parte Welch*, 981 S.W.2d 183,

## B. Counsel's Conduct Was Not Constitutionally Deficient Because the Jury Instruction Given Was More Favorable Than an Instruction on Mistake of Fact.

The trial judge in this case instructed the jury that the State was required to prove that appellant knew that the bills he tried to pass to another were counterfeit. Under these instructions, any mistake, even a "reckless or negligent" one, would, if believed, rebut the culpable mental state and exculpate appellant.

Therefore, appellant's attorney was not ineffective when he could establish his defensive theory and obtain an acquittal merely by raising a doubt in the jury's mind that appellant honestly and sincerely believed that the currency he tried to change into a money order was authentic. He did not need to take on the additional burden of showing a second prong—required under the statutory mistake-of-fact defense—that a reasonable person in appellant's position would have believed that the currency was authentic.

Appellant's attorney urged the easier defense—an honest mistake—rather than the more onerous one—an honest *and reasonable* mistake. Given the evidence in this case—in which it is hard to argue that appellant's mistaken belief about the authenticity of the $60,000 cash he was sent in a newspaper-wrapped box through the mail from a stranger in Nigeria was reasonable—counsel's decision, albeit inadvertent, was a wise one given the paucity of evidence suggesting the reasonableness of appellant's belief.

## C. Assuming Counsel's Conduct Was Deficient, Appellant Has Not Proven Prejudice.

If one could assume both that appellant was clearly entitled to a jury instruction on mistake of fact and that the evidence supported a finding that appellant's mistaken belief was reasonable, then counsel's action in failing to request a jury instruction on the statutory defense of mistake of fact might be found defective. That would satisfy the first prong of the *Strickland* test,[18] but not the second prong, that of prejudice.

Here, the jury was instructed that it must acquit unless it believed, beyond a reasonable doubt, that appellant did know that the currency he gave to the H–E–B clerk to buy a money order was counterfeit. The entire closing argument by appellant's counsel was directed toward that single fact, while the prosecutor's argument stressed that appellant did know that the money was counterfeit. The jury obviously rejected appellant's claim of an honest or good-faith mistake by finding him guilty. If the jury rejected that claim, then it inexorably follows that it would have rejected the two-pronged claim that appellant made an honest mistake *and* that his mistake was a reasonable one that an ordinary prudent person in his position would have likely made. Appellant has failed to show that, even if his counsel's conduct had been deficient, there is any reasonable likelihood that the verdict would have been different had the jury been instructed on the statutory mistake-

184 (Tex.Crim.App.1998) ("[W]e will not find counsel ineffective where the claimed error is based upon unsettled law.").

18. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *see Lopez v. State*, 343 S.W.3d 137, 142 (Tex.

Crim.App.2011) (*Strickland* requires defendant to show "that (1) counsel's representation fell below an objective standard of reasonableness, and (2) the deficient performance prejudiced the defense.").

of-fact defense.[19]

---

**19.** *See Strickland,* 466 U.S. at 687, 104 S.Ct. 2052; *Jackson v. State,* 973 S.W.2d 954, 956 (Tex.Crim.App.1998) (to establish ineffective assistance of counsel claim, defendant must prove, by a preponderance of the evidence, that "counsel's representation fell below an objective standard of reasonableness based upon prevailing norms and that there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is defined as a probability sufficient to undermine confidence in the outcome of the proceedings.") (citations omitted).